**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHUNG H. CHANG, | |
|     Plaintiff, | |
|         v. | 19 Civ. 2091 (LAP) |
| WARNER BROS. ENTERTAINMENT, INC., | |
|     Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT WARNER BROS. ENTERTAINMENT, INC.'S**
<u>**MOTION TO COMPEL ARBITRATION AND STAY THIS ACTION**</u>

Dᴏɴᴛᴢɪɴ Nᴀɢʏ & Fʟᴇɪssɪɢ LLP
980 Madison Avenue
New York, New York 10075

i

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND .................................................................................... 3

    I.    PLAINTIFF WORKS AT WBDL AND AGREES TO ARBITRATE ALL DISPUTES ....................... 3

    II.   WBDL'S STREAMING SERVICE IS SHUT DOWN, PLAINTIFF IS TERMINATED AND THE JAMS ARBITRATION IS COMMENCED ...................................................................... 4

    III.  PLAINTIFF DOES NOT OBJECT TO THE JAMS ARBITRATION BUT PROCEEDS TO FILE THE INSTANT ACTION ....................................................................................... 4

LEGAL STANDARD ............................................................................................. 5

ARGUMENT .......................................................................................................... 6

    I.    PLAINTIFF AGREED TO ARBITRATE THE CLAIMS AT ISSUE HERE ......................................... 6

    II.   WBEI IS ENTITLED TO ENFORCE THE ARBITRATION AGREEMENT ..................................... 7

    III.  THE ARBITRATOR MUST DETERMINE WHETHER PLAINTIFF'S CLAIMS FALL UNDER THE ARBITRATION CLAUSE (THOUGH THEY PLAINLY DO) ....................................... 8

         A.    Settled Law Requires Enforcement of Agreements to Have Arbitrators Resolve Arbitrability ........................................................................... 8

         B.    Settled Law Holds that Discrimination Claims Like Those Alleged Here Can Be the Subject of an Arbitration Clause ......................................... 9

    IV.  REQUEST FOR EXPEDITED CONSIDERATION .................................................................. 11

CONCLUSION ...................................................................................................... 11

# TABLE OF AUTHORITIES

## Cases

*Arcinaga v. Gen. Motors Corp.*,
   460 F.3d 231 (2d Cir. 2006)......................................................................... 5

*Arshad v. Transportation Sys., Inc.*,
   183 F. Supp. 3d 442 (S.D.N.Y. 2016).......................................................... 10

*Bank Julius Baer & Co. v. Waxfield Ltd.*,
   424 F.3d 278 (2d Cir. 2005)......................................................................... 5

*Benihana of Tokyo, LLC v. Benihana Inc.*,
   73 F. Supp. 3d 238 (S.D.N.Y. 2014)............................................................ 7

*Berger v. Cantor Fitzgerald Sec.*,
   967 F. Supp. 91 (S.D.N.Y. 1997) ................................................................ 6

*Circuit City Stores, Inc. v. Adams*,
   532 U.S. 105 (2001)..................................................................................... 2

*Dean Witter Reynolds Inc. v. Byrd*,
   470 U.S. 213 (1985)..................................................................................... 5

*Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*,
   191 F.3d 198 (2d Cir. 1999)..................................................................... 2, 10

*Genesco, Inc. v. T. Kakiuchi & Co, Ltd.*,
   815 F.2d 840 (2d Cir. 1987)......................................................................... 6

*Gilmer v. Interstate/Johnson Lane Corp.*,
   500 U.S. 20 (1991)....................................................................................... 2

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   U.S. No. 17-1272 (Jan. 8, 2019) ........................................................... 5, 8, 9

*Holick v. Cellular Sales of New York, LLC*,
  802 F.3d 391 (2d Cir. 2015) ................................................................ 5

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
  387 F.3d 163 (2d Cir. 2004)................................................... 2, 7, 8, 9

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*,
  252 F.3d 218 (2d Cir. 2001)............................................................. 10

*Mildworm v. Ashcroft*,
  200 F. Supp. 2d 171 (E.D.N.Y. 2002) .............................................. 10

*Molina v. Coca-Cola Enterprises, Inc.*,
  2009 WL 1606433 (W.D.N.Y. June 8, 2009)................................... 10

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983)................................................................................ 5

*Polit v. Glob. Foods Int'l Corp.*,
  2015 WL 1780161 (S.D.N.Y. Apr. 20, 2015)................................... 10

*Rent-A-Center, West, Inc. v. Jackson*,
  561 U.S. 63 (2010).............................................................................. 9

*Reyes v. Gracefully, Inc.*,
  2018 WL 2209486 (S.D.N.Y. May 11, 2018) ................................ 7, 8

*Smith/Enron Cogeneration Ltd. P'ship v. Am. Home Assurance Co.*,
  271 F.3d 403 (2d Cir. 2001)................................................................ 8

### Statutes

9 U.S.C. § 1............................................................................................ 1

9 U.S.C. § 2............................................................................................ 5

9 U.S.C. § 4....................................................................................... 5, 11

Defendant Warner Bros. Entertainment, Inc. ("WBEI") respectfully submits this memorandum of law in support of its Motion to Compel Arbitration and Stay this Action under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA").[1]

## PRELIMINARY STATEMENT

This is an employment discrimination case.  Plaintiff alleges that WBEI's subsidiary, non-party Warner Bros. Digital Labs Inc. ("WBDL," and together with WBEI, "Warner"), terminated his employment and retaliated against him on the basis of race and national origin in violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981") and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 *et seq.* (the "N.Y.C. Human Rights Law"). Plaintiff, a sophisticated finance executive who made a six-figure salary throughout his tenure at WBDL (as well as substantial bonuses), signed an employment agreement that contains an arbitration clause.  WBEI brings this motion to compel arbitration of Plaintiff's claims, in accordance with that agreement.

The record establishes that Plaintiff's agreement to arbitrate should be enforced.  Plaintiff's employment agreement with WBDL provides that "any and all controversies, claims or disputes . . . arising out of or relating in any way to your employment with Company (pursuant to this Agreement or otherwise), or termination thereof, *shall* be submitted to final and binding arbitration."  Ex. A ¶ 13(h).  Plaintiff's Complaint leaves no doubt that his claims fall within the broad scope of that provision: Plaintiff's claims are entirely about his "employment" with WBDL, including his "termination" by WBDL in November 2018, and he even refers to the present dispute as "the dispute concerning plaintiff Chang's employment and termination."  ¶ 100.  Settled law

---

[1] Unless otherwise noted, all references to numbered exhibits are to the exhibits accompanying the March 8, 2019 Declaration of Matthew S. Dontzin (the "Dontzin Decl."); all citations to "¶ __" refer to Plaintiff's Complaint (the "Complaint"); and all emphasis in quotations was added by WBEI.

holds that an agreement to arbitrate claims such as those asserted here should be enforced.  *See, e.g.*, *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001) (applying FAA to discrimination claims and declaring that FAA applies generally to employment contracts except for those of transportation workers); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25-36 (1991) (enforcing compulsory arbitration of an Age Discrimination in Employment Act claim); *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 206 (2d Cir. 1999) (applying arbitration provision to Title VII claims).

While the plain terms of Plaintiff's employment agreement and Plaintiff's Complaint are, by themselves, sufficient to establish that arbitration should be compelled, the record is even more compelling here because *Plaintiff currently is party to an active arbitration with WBDL about the same claims asserted in his Complaint* (the "JAMS Arbitration").  The JAMS Arbitration has been pending since February 11, 2019.

In a transparent effort to circumvent his agreement to arbitrate, Plaintiff has sued WBDL's parent corporation, WBEI.[2]  But employees cannot circumvent arbitration provisions simply by naming their employer's corporate parent as the defendant in a court proceeding.  To the contrary, it is settled law that, where a plaintiff tactically sues only a parent corporation in an effort to avoid his or her arbitration agreement with its subsidiary, the law compels such plaintiff to arbitrate all claims that "are intertwined with" the agreement to arbitrate that plaintiff is seeking to disclaim.  *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 177 (2d Cir. 2004) (citation and internal quotation marks omitted).  Here, the Complaint leaves no doubt that Plaintiff's claims are intertwined with—indeed, directly arise from—his "employment" and "termination" by WBDL.

---

[2] Notably, Plaintiff's filing violates confidentiality agreements and ethical obligations applicable to Plaintiff and his counsel.  Warner reserves all rights with respect to these violations.

Plaintiff's claims are without merit, and Warner is confident that the arbitrator will reach this conclusion in the course of the parties' arbitration.  The Court should stay this action, and compel arbitration, so that the parties can continue to litigate this dispute in the JAMS Arbitration, their contractually-chosen forum.

## FACTUAL BACKGROUND

### I.    PLAINTIFF WORKS AT WBDL AND AGREES TO ARBITRATE ALL DISPUTES

Plaintiff is a former WBDL Vice President.  ¶ 28.  When WBEI acquired WBDL in 2016, ¶ 31, Plaintiff chose to remain in his Vice President position at WBDL, a decision memorialized by an employment agreement (the "Agreement") dated June 23, 2016.  Ex. A.  In Paragraph 13(h) of the Agreement, Plaintiff agreed that, as a condition of employment, "any and all controversies, claims or disputes . . . arising out of or relating in any way to [his] employment with Company (pursuant to this Agreement or otherwise), or termination thereof, *shall* be submitted to final and binding arbitration."  Ex. A ¶ 13(h).

The Agreement identifies JAMS as the arbitral tribunal.  *Id.*  It also specifically provides that "[a]ny question concerning the arbitrability of any claim or issue arising under this Paragraph shall be resolved by the arbitrator to the fullest extent permitted by applicable law."  *Id.*  In Paragraph 10 of the Agreement ("Survivability"), Plaintiff agreed that all "rights and obligations under Paragraphs 9 through 13 [including the arbitration clause] . . . will survive the expiration of the Term or termination of this Agreement."  *Id.* ¶ 10.

In early 2018, WBDL and Plaintiff agreed that he would continue as a Vice President in a side letter signed March 28, 2018 ("Side Letter").  Ex. B.  The parties further agreed that, although the 2016 Agreement was to be terminated, "in accordance with Paragraph 10 of the [Agreement] ("Survivability"), certain obligations and rights provided under that agreement will survive the

termination or expiration of the agreement, and remain enforceable." *Id.* The arbitration provision was one of the specific terms that survived. *See* Ex. A ¶¶ 10, 13(h).

## II.   WBDL's Streaming Service Is Shut Down, Plaintiff Is Terminated and the JAMS Arbitration Is Commenced

In October 2018, WBDL's video streaming service was shut down. In November 2018, WBDL terminated Plaintiff, along with dozens of other employees. Plaintiff alleges that he was terminated because of Warner's discrimination against all of the "Asian American executives." ¶ 6. Warner categorically denies these allegations.

In December 2018, Plaintiff, through his counsel, sent Warner a letter demanding a monetary settlement in exchange for not filing his claims in this Court. On January 17, 2019, counsel to Warner wrote Plaintiff's counsel to provide a copy of the arbitration provision and to explain its terms. *See* Ex. C. On February 11, 2019, WBDL commenced the JAMS Arbitration against Plaintiff.

## III.   Plaintiff Does Not Object to the JAMS Arbitration But Proceeds to File the Instant Action

To date, Plaintiff has not voiced any objection to the JAMS Arbitration. On February 28, the parties' selections for arbitrators were due. On that same day, Plaintiff's counsel wrote to JAMS, stating that they needed an extension until March 7 to submit Plaintiff's arbitrator rankings because one of Plaintiff's attorneys had a medical emergency while travelling. Dontzin Decl. ¶ 5. Warner consented to this requested extension. *Id.*

Six days later, despite this medical emergency, Plaintiff's counsel filed the present Complaint. The next day, on March 7, Plaintiff's counsel sent an e-mail to JAMS, confirming that they planned to submit Plaintiff's arbitrator rankings by close of business to "keep the ball moving again" and stating, "I look forward to working with you all on this matter." ¶ 6.

## LEGAL STANDARD

The FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983).  Pursuant to this policy, and in accordance with well-settled principles of freedom of contract, the FAA mandates that arbitration agreements entered into by competent parties be upheld as "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Accordingly, if, as here, there has been a "failure, neglect, or refusal of any party to honor an agreement to arbitrate," courts are directed "to order parties to proceed to arbitration."  9 U.S.C. § 4; *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("[T]he Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.").  The presumption of arbitrability is "difficult to overstate." *Arcinaga v. Gen. Motors Corp*., 460 F.3d 231, 234 (2d Cir. 2006).

Applying these principles, the Second Circuit employs a two-part inquiry in determining whether a motion to compel arbitration should be granted: "(1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement encompasses the claims at issue." *Holick v. Cellular Sales of New York, LLC*, 802 F.3d 391, 394 (2d Cir. 2015) (quoting *Bank Julius Baer & Co. v. Waxfield Ltd.*, 424 F.3d 278, 281 (2d Cir. 2005)).  Further, with respect to any threshold questions regarding arbitrability—*e.g.*, "whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy"—where the parties' agreement specifies that such questions are to be decided by the arbitrator, not a court, "courts must respect the parties' decision as embodied in the contract."  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, U.S. No. 17-1272, slip op. at *2, *6 (Jan. 8, 2019) (further citations omitted).

**ARGUMENT**

The record establishes that Plaintiff agreed to arbitrate all claims arising out of or related to his employment and termination, (*see* Ex. A ¶ 13(h)), and, as explained below, he cannot circumvent that agreement by suing WBEI rather than WBDL.  Questions about the arbitrability of Plaintiff's claims—assuming there are any—are contractually assigned to the arbitrator.  *Id.* Because the parties agreed to arbitrate the very claims that Plaintiff now seeks to bring in this Court, WBEI's motion should be granted.

**I.**     **PLAINTIFF AGREED TO ARBITRATE THE CLAIMS AT ISSUE HERE**

The record establishes that Plaintiff agreed to arbitrate the claims in his Complaint.  By signing the Agreement, Plaintiff consented to the arbitration provision's plain terms:  "[A]ny and all controversies, claims or disputes . . . arising out of or relating in any way to your employment with Company (pursuant to this Agreement or otherwise), or termination thereof, shall be submitted to final and binding arbitration."  In determining whether a party has agreed to arbitrate, courts apply "generally accepted principles of contract law."  *Genesco, Inc. v. T. Kakiuchi & Co, Ltd.*, 815 F.2d 840, 845 (2d Cir. 1987).  Under those principles, "a person who signs a contract is presumed to know its contents and to assent to them."  *Berger v. Cantor Fitzgerald Sec.*, 967 F. Supp. 91, 93 (S.D.N.Y. 1997).

Plaintiff confirmed the continued applicability and survival of that arbitration provision as recently as March 2018.  *See* Ex. B.  He has been reminded of that obligation in explicit and unmistakable terms over the last two months, and he has raised no objection to it, including while actively participating in the JAMS arbitration proceedings as a party.  *See* Ex. C; Dontzin Decl. ¶ 5.

Moreover, the arbitration provision makes clear that Plaintiff's claims "*shall* be submitted to final and binding arbitration."  Ex. A ¶ 13(h).  When the word "shall" appears in an arbitration

agreement, it is a "mandatory term[]." *Benihana of Tokyo, LLC v. Benihana Inc.*, 73 F. Supp. 3d 238, 249 (S.D.N.Y. 2014). Thus, Plaintiff expressly agreed that JAMS arbitration would be the *exclusive* forum for his claims.

## II.   WBEI IS ENTITLED TO ENFORCE THE ARBITRATION AGREEMENT

In an effort to circumvent the Arbitration Provision, Plaintiff named WBEI as the defendant in this action, rather than WBDL, and alleged that, "[u]pon information and belief," he does not have an arbitration agreement with WBEI:

> 14. Upon information and belief, Plaintiff Chang never agreed to arbitrate any disputes with Warner Bros.

¶ 14. But Plaintiff's attempt to avoid his agreement to arbitrate must fail: under binding Second Circuit law, WBEI is empowered to compel arbitration of Plaintiff's claims.

A nonsignatory to an arbitration agreement may enforce that agreement and compel arbitration "where a careful review of the relationship among the parties, the contracts they signed, and the issues that had arisen among them discloses that 'the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.'" *JLM Indus.*, 387 F.3d at 177 (citation and internal quotation marks omitted). Courts apply a two-pronged test, which looks to whether "(1) the signatory's claims arise under the subject matter of the underlying agreement, and (2) whether there is a close relationship between the signatory and the non-signatory party." *Reyes v. Gracefully, Inc.*, No. 17 Civ. 9328, 2018 WL 2209486, at *4 (S.D.N.Y. May 11, 2018) (compelling arbitration of employment claims).

Here, there can be no question that Plaintiff's employment discrimination and retaliation claims arise under the subject matter of his employment agreement with WBEI's subsidiary. *See id.* at *5 (compelling arbitration because the arbitration clause covered "all other claims relating to his employment" (internal quotation marks omitted)). Nor can there be any question that a

parent-subsidiary relationship is sufficiently close.  *See JLM Indus., Inc.*, 387 F.3d at 178; *Reyes,* 2018 WL 2209486, at *5 (finding the second prong met because "the plaintiff worked interchangeably between [the defendant] and the other [affiliated] entities without differentiating among them").  Further, because the Complaint treats WBEI and WBDL "as a single unit," *see* ¶ 1 (defining WBEI and WBDL collectively as "the Company"), Plaintiff is estopped from resisting arbitration against the nonsignatory.  *Smith/Enron Cogeneration Ltd. P'ship v. Am. Home Assurance Co.*, 271 F.3d 403, 406 (2d Cir. 2001) (party that treats signatory and nonsignatory affiliates "as a single unit" is estopped from resisting arbitration); *JLM*, 387 F.3d at 178 (arbitration agreement should be enforced where Complaint "has treated the [parent company] as if" it were a signatory (citation omitted)).

## III.   THE ARBITRATOR MUST DETERMINE WHETHER PLAINTIFF'S CLAIMS FALL UNDER THE ARBITRATION CLAUSE (THOUGH THEY PLAINLY DO)

The broad scope of the arbitration provision in the parties' Agreement—covering "any and all controversies, claims or disputes . . . arising out of or relating in any way to your employment with Company (pursuant to this Agreement or otherwise), or termination thereof"—unequivocally requires arbitration of the instant dispute.  To the extent there is any question about the scope of the arbitration provision, its terms require an arbitrator to resolve it: "[a]ny question concerning the arbitrability of any claim or issue . . . *shall* be resolved by the arbitrator to the fullest extent permitted by applicable law."  Ex. A ¶ 13(h).

### A.   Settled Law Requires Enforcement of Agreements to Have Arbitrators Resolve Arbitrability

It is settled law that where, as here, the parties "clear[ly] and unmistakab[ly]" specified in their agreement that any questions regarding arbitrability would be decided by the arbitrator, "courts must respect the parties' decision as embodied in the contract" and submit any such question to the arbitral authority.  *Henry Schein*, U.S. No. 17-1272, slip op. at *2, *6 (further

citations omitted). This follows from a long line of Supreme Court precedent respecting the freedom of contracting parties "to have an arbitrator decide not only the merits of a particular dispute, but also 'gateway' questions of 'arbitrability'"—in particular, any questions regarding "whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Id.* at \*4 (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)) (further citation omitted). This is because "[j]ust as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator." *Id.* at \*5.

Thus, even if there could be any dispute regarding arbitrability (which there cannot), it is "clear and unmistakable" that the Agreement requires that dispute to be decided by the arbitrator, not a court. *Henry Schein*, U.S. No. 17-1272, slip op. at \*6. The terms of that agreement must be honored here.

### B. Settled Law Holds that Discrimination Claims Like Those Alleged Here Can Be the Subject of an Arbitration Clause

Finally, even if the Agreement did permit threshold arbitrability questions to be adjudicated by a court, rather than the arbitrator (which it does not), the plain terms of the Agreement are again dispositive. Plaintiff agreed to arbitrate "any and all controversies, claims or disputes" that "aris[e] out of or relat[e] in any way to [Plaintiff's] employment with Company . . . or termination thereof." Ex. A ¶ 13(h). This "broad" type of arbitration agreement, which encompasses "any and all" disputes arising out of Plaintiff's "employment" or "termination," *id.*, requires "a presumption of arbitrability and arbitration" and is to be enforced as a matter of course, *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 172 (2d Cir. 2004).

Moreover, it is "well settled" that the very "statutory discrimination claims" that Plaintiff brings—which arise exclusively under federal and New York City employment discrimination

laws—"can be the subject of an arbitration clause." *Molina v. Coca-Cola Enterprises, Inc.*, No. 08 Civ. 6370, 2009 WL 1606433, at *6 n.7 (W.D.N.Y. June 8, 2009) (compelling arbitration of discrimination and retaliation claims brought under § 1981 and the New York State Human Rights Law). "Indeed, courts repeatedly have construed similar arbitration agreements broadly to encompass any dispute arising out of the employment relationship, including employment discrimination claims." *Mildworm v. Ashcroft*, 200 F. Supp. 2d 171, 178 (E.D.N.Y. 2002) (enforcing, in case alleging employment discrimination claims under federal and New York State law, a similar arbitration clause providing for arbitration of "any legal and/or equitable claims arising out of [plaintiff's] employment or termination of employment") (collecting cases); *see Arshad v. Transportation Sys., Inc.*, 183 F. Supp. 3d 442, 448-49 (S.D.N.Y. 2016) (same as to discrimination and retaliation claims brought under § 1981 and the New York City Human Rights Law because "broad arbitration provisions encompass statutory discrimination claims arising out of a putative employment relationship, even if not explicitly stated in the arbitration clause"). In doing so, courts recognize that in respecting the parties' contract, "only the forum—an arbitral rather than a judicial one—is affected, and plaintiff's rights may be as fully vindicated in the former as in the latter." *Desiderio v. Nat'l Ass'n of Securities Dealers, Inc.*, 191 F.3d 198, 205-06 (2d Cir. 1999).[3]

---

[3] Plaintiff's allegations regarding "post-termination retaliation," ¶¶ 93-98, in no way undermine his agreement to arbitrate such claims. *See Polit v. Glob. Foods Int'l Corp.*, No. 14 Civ. 7360, 2015 WL 1780161, at *4 & *4 n.7 (S.D.N.Y. Apr. 20, 2015) ("Because the factual allegations underlying Polit's post-termination retaliation claim"— which was based on a claim (as here) that Polit's former employer had filed counterclaims against him—"'touch matters' covered by the employment agreement, the claim is subject to arbitration. . . . [But e]ven were Polit's post-termination retaliation 'collateral' to his employment agreement, it would still be subject to arbitration because it certainly implicates the parties' rights and obligations under the employment agreement." (citing *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001))).

**IV.    REQUEST FOR EXPEDITED CONSIDERATION**

Given the ongoing JAMS Arbitration, and to avoid undue delay in those proceedings, WBEI respectfully requests that this matter be considered on an expedited basis with a corresponding briefing schedule, subject of course to this Court's scheduling needs.  See 9 U.S.C. § 4 (allowing motions to compel arbitration to be heard as soon as five days after service).[4]

## CONCLUSION

For all the foregoing reasons, WBEI respectfully requests that Plaintiff be compelled to arbitrate with WBEI and WBDL and that the action in this Court be stayed.

Dated:   New York, New York
         March 8, 2019

                                        Respectfully submitted,


                                        /s/ Matthew S. Dontzin_____
                                        Matthew S. Dontzin
                                        Tibor L. Nagy, Jr.
                                        Tracy O. Appleton
                                        DONTZIN NAGY & FLEISSIG LLP
                                        980 Madison Avenue
                                        New York, New York 10075
                                        Telephone: (212) 717-2900
                                        Facsimile: (212) 717-8088

                                        *Attorneys for Defendant Warner Bros.*
                                        *Entertainment, Inc.*

---

[4]        WBEI does not believe oral argument will be required on this Motion, but is amenable to participating in oral argument if it is desired by the Court.