**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------
CHUNG H. CHANG,

              *Plaintiff,*

      *v.*                                        Case No. 19-cv-2091 (LAP)

WARNER BROS. ENTERTAINMENT, INC.

              *Defendant.*
------------------------------------------------------------------------

## MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANT'S MOTION TO COMPEL ARBITRATION

Veronica S. Jung, Esq.
Owen H. Laird, Esq.
LAW OFFICES OF VERONICA S. JUNG, PLLC
200 Park Avenue, Suite 1700
New York, NY 10166
Telephone: (212) 897-1981
Email: vjung@veronicajunglaw.com
Email: olaird@veronicajunglaw.com

*Attorneys for Plaintiff Chung H. Chang*

Date: March 29, 2019

# TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ...................................................................................1

II.  STATEMENT OF FACTS ........................................................................................3

    **A.**   Plaintiff Chang's Employment History ......................................................4

    **B.**   Defendant Warner Bros. Discriminates and Retaliates against
    Plaintiff ............................................................................................................6

III. ARGUMENT ............................................................................................................6

    **A.**   Claims In The Instant Action Are Not Subject To The Arbitration
    Clause Buried Within Plaintiff Chang's Employment Agreement ........................7

    **B.**   Warner Bros. Is Not A Party To The Arbitration Clause .......................................8

    **C.**   The Arbitration Clause At Issue Is Unenforceable Under Well-
    Settled New York State Law ...............................................................................10

        **1.**   The Arbitration Clause Is Not A Binding Contractual
        Agreement Under New York State Law ..............................................10

        **2.**   The Arbitration Clause Is Unenforceable Because It Did
        Not Survive The Termination Of The Employment
        Agreement That Contains It ................................................................11

        **3.**   The Arbitration Clause At Issue Is Unenforceable Because
        It Is Unconscionable .............................................................................13

            **a.**   The Arbitration Clause Is Procedurally
            Unconscionable ........................................................................13

            **b.**   The Arbitration Clause is Substantively
            Unconscionable ........................................................................14

IV.  CONCLUSION .......................................................................................................17

## TABLE OF AUTHORITIES

**Cases**......................................................................................................................**Page(s)**

*Abeona Therapeutics, Inc. v. EB Research P'ship*, No. 18-cv-10889 (DLC), 2019
U.S. Dist. LEXIS 24376 (S.D.N.Y. Feb. 14, 2019)....................................................9

*Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 51, 94 S. Ct. 1011 (1974)..................................7

*Am. Centennial Ins. Co. v. Williams*, 233 A.D.2d 320, 649 N.Y.S.2d 190
(App. Div. 1996).........................................................................................................11

*Applied Energetics, Inc. v. NewOak Capital Markets, LLC,* 645 F.3d 522
(2d Cir. 2011).............................................................................................................11

*Bensadoun v. Jobe-Riat,* 316 F.3d 171 (2d Cir. 2003) ....................................................6

*Brower v. Gateway 2000, Inc.*, 246 A.D.2d 246, 676 N.Y.S.2d 569 (N.Y. App.
Div. 1st Dep't 1998) ..................................................................................................13

*Castellanos v. Raymours Furniture Co.*, 291 F. Supp. 3d 294 (E.D.N.Y. 2018) .........................12

*Fiveco, Inc. v. Haber,* 11 N.Y.3d 140 (2008) ...............................................................10

*Friedmann v. Raymour Furniture Co*., No. 12-cv-1307 (LDW) (AKT), 2012 U.S.
Dist. LEXIS 149511 (E.D.N.Y. Oct. 16, 2012) ........................................................14

*Gallagher v. Pepe Auto Grp.*, No. 18-cv-3433 (VB), 2019 U.S. Dist. LEXIS
27386 (S.D.N.Y. Feb. 21, 2019)..................................................................................7

*Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840 (2d Cir. 1987) ................................10

*Gillman v. Chase Manhattan Bank*, 73 N.Y.2d 1, 10, 537 N.Y.S.2d 787, 534
N.E.2d 824 (1988)......................................................................................................13

*Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287 (2010) ................................10

*Kopple v. Stonebrook Fund Mgmt., LLC*, 18 A.D.3d 329, 794 N.Y.S.2d 648 (App.
Div. 1st Dept. 2005)....................................................................................................9

*Lockette v. Stanley*, No. 18-cv-876 (JGK), 2018 U.S. Dist. LEXIS 171156
(S.D.N.Y. Oct. 3, 2018) .............................................................................................12

*Marben Realty Co. v. Sweeney,* 87 A.D.2d 561 (N.Y. App. Div. 1st Dep't 1982).......................11

*Medidata Sols., Inc. v. Veeva Sys.*, 748 F. App'x 363 (2d Cir. 2018) .............................9

*Noohi v. Toll Bros., Inc*., 708 F.3d 599 (4th Cir. 2013)....................................................9

*Peterson v. Beale,* No. 92-cv-5412, 1995 U.S. Dist. LEXIS 11580
(S.D.N.Y. Aug. 11, 1995) ..........................................................................10

*Rent-A-Ctr., W., Inc. v. Jackson,* 561 U.S. 63 (2010) ....................................10

*Schnabel v. Trilegiant Corp.,* 697 F.3d 110 (2d Cir. 2012) ..............................6

*Sherry v. Sisters of Charity Med. Ctr.*, 98-cv-6151 (JG), 1999 U.S. Dist. LEXIS
6623 (E.D.N.Y. May 4, 1999) ..................................................................13

*Trumbull v. Century Mktg. Corp.,* 12 F. Supp. 2d 683 (N.D. Ohio 1998).....................9

*Whitaker v. Clear Channel Broad., Inc.*, No. 04-cv-2041 (JCH), 2005 U.S. Dist.
LEXIS 38474 (D. Conn. Dec. 16, 2005)...........................................................14

*Zisumbo v. Convergys Corp.*, No. 14-cv-134 (RJS), 2017 U.S. Dist. LEXIS
193832 (D. Utah Nov. 22, 2017) ................................................................14

Plaintiff, by and through his undersigned counsel, respectfully submits this Memorandum of Law in opposition to Defendant Warner Bros. Entertainment, Inc.'s ("Warner Bros." or "Defendant") Motion to Compel Arbitration (the "Motion").

## I.    PRELIMINARY STATEMENT

In addition to the unlawful actions alleged in the Complaint, Warner Bros. now moves to compel the arbitration of the instant case.  In so doing, Warner Bros. moves to further suppress Plaintiff's rights and the rights of its employees.  Arbitration of this matter is legally improper for three reasons: (i) this case involves claims outside the reach of the Arbitration Clause; (ii) this case involves parties outside the reach of the Arbitration Clause; and (iii) the Arbitration Clause itself, buried in a terminated employment agreement, is unenforceable.

In addition to the legal bases for denying Defendant's motion, the Court should deny it because it is fundamentally contrary to the laws which this Court is tasked with enforcing.  At its heart, this case is case is about civil rights and anti-retaliation statutory protections guaranteed under Federal and local laws.  Sending this case – and other cases like it – to arbitration would undermine and frustrate the remedial purposes of the statutes at issue.

In the instant action, Plaintiff Chang brings claims against Warner Bros. which arose after his employment with Defendant ended.  Specifically, in his Complaint, Plaintiff Chang alleges that Warner Bros. retaliated against him after he complained that his termination from Warner Bros. was discriminatory.  *Both* the complaint and the retaliation occurred *well after* the employment relationship ended.  Therefore, these claims simply are not arbitrable under the Arbitration Clause.

Next, Plaintiff Chang alleges that executives at Warner Bros. made discriminatory comments and that they were instrumental in creating the discriminatory, hostile atmosphere in which Plaintiff Chang worked.  Warner Bros. is an appropriate party to this action.  The

employment contract containing the Arbitration Clause acknowledges and separately identifies Warner Bros. However, the language of the Arbitration Clause itself does not include Warner Bros., only its subsidiary, DramaFever.  Because Warner Bros. is not bound by the provisions of the Arbitration Clause, this action cannot be subjected to arbitration under the very terms of the contract.

Finally, the Arbitration Clause itself and the delegation provision included therein are unenforceable under well-settled principles of New York State contract law.  Specifically, the Arbitration Clause is buried within an Employment Agreement, under the subheading of "general" within a paragraph that runs – single-spaced – more than an entire page.  Further, Warner Bros. terminated the Employment Agreement containing the Arbitration Clause and implemented an Employment Letter which contained no specific reference to the Arbitration Clause.  After the termination of the Employment Agreement, the consideration provided for in the Arbitration Clause no longer existed.  This rendered the Arbitration Clause unenforceable.

Further, Warner Bros.' Arbitration Clause is also unenforceable because it violates public policy.  The Arbitration Clause at issue is grossly overbroad and undermines the legislature's important public interest promoted by the legislature: to make public claims of discrimination. Warner Bros. Arbitration Clause further violates public policy by willfully refusing to acknowledge that certain claims are, by law, not subject to arbitration provisions.  In doing so, Warner Bros. improperly discourages its employees from pursuing their protected rights.

In addition, Warner Bros. imposes a statute of limitations which is significantly shorter than those set forth under Federal, state, and local anti-discrimination laws.  The reduced statute of limitations significantly curtails employees' substantive rights by preventing them from filing

claims that arise more than six months after their employment ends.  In fact, Warner Bros.'

Arbitration Clause is so overly broad and punitive it is unenforceable.

For all the reasons laid out above, the Delegation Provision in Warner Bros.' Arbitration

Clause is similarly unenforceable.  Accordingly, this Court should: (i) retain jurisdiction over

this matter, (ii) deny Defendant's Motion, and (iii) allow discovery to proceed.

## II.   STATEMENT OF FACTS

For a complete description of the facts relevant to this action Plaintiff respectfully directs

the Court to the Complaint.  Chang Decl. ¶ 6, Ex. 1.

The Plaintiff, Chung H. Chang ("Plaintiff" or "Chang"), was employed as a senior

member of first DramaFever's then Warner Bros.' Digital Labs' leadership teams for

approximately three years.  Complaint ("Compl.") ¶¶ 27-28, 68-74.  DramaFever a digital

streaming service providing Korean and other East-Asian media to Western audiences.  *Id.*

Plaintiff Chang, a Korean-American man, has over two decades of experience working in

finance and accounting.  *Id.* ¶ 25.

Plaintiff commenced this action on March 6, 2019, bringing (a) a race discrimination

claim and a retaliation claim against defendant Warner Bros. under Section 1981 of the Civil

Rights Act of 1866 ("§ 1981") (*Id.* ¶¶ 106-122); and (b) claims of race, and national origin

discrimination and retaliation under the New York City Human Rights Law (NYCHRL) against

defendant Warner Bros. (*Id.* ¶¶ 123-142).  Defendant filed its Motion to Compel Arbitration (the

"Motion") on March 8, 2019.

Plaintiff alleges that Defendant discriminated against him and other Asian-Americans on

the basis of race and national origin.  *Id.* ¶¶ 15, 48, 70, 106-111, 123-129.  He alleges that he was

discriminated against and subject to disparate treatment, and that when he raised her concerns to

Warner Bros. concerning discrimination at the Company, Warner Bros. retaliated against him

and ultimately unlawfully terminated his employment.  *See, e.g., id.* ¶¶ 15, 48, 93-96, 112-122,

130-142.  Plaintiff further alleges that, after Warner Bros. terminated him, he complained to

Warner Bros. that his termination was discriminatory.  *Id.* ¶ 93.  Plaintiff alleges that, in response

to his complaint, Warner Bros. subjected him to further acts of retaliation, including, *inter alia*,

threatening him with legal claims in order to deter him from pursuing his claims of

discrimination and retaliation. *Id.* ¶ 116.

A.   **Plaintiff Chang's Employment History**

Plaintiff Chang began working for DramaFever in May 2015 as Vice President, Finance.

At the time Chang joined DramaFever, most of the executives employed at DramaFever were

Asian American.  When Plaintiff Chang joined DramaFever, Softbank, a Japanese conglomerate,

held a controlling stake in the company.  Compl. ¶ 29.  During or about mid-2015, and perhaps

even earlier, Warner Bros. was engaged in talks about acquiring DramaFever from Softbank;

Warner Bros. finally acquired DramaFever in February 2016.  Compl. ¶ 31.  As part of that

transaction, DramaFever changed its name to Warner Bros. Digital Labs., a division of Warner

Bros.  Compl. ¶ 31.

Plaintiff Chung received the Employment Agreement (the "Employment Agreement") on

or about June 23, 2016.  Chang Decl. ¶ 7, Ex. 2.  The Employment Agreement sets forth key

terms of his employment, including his title, salary, and the fact that he was not an at-will

employee, but that the term of Plaintiff's Chang's employment was to run through March 31,

2018.  Employment Agreement, p. 1.

The Employment Agreement, an eleven (11) page single-spaced document, also contains

Warner Bros. Arbitration Clause.  Employment Agreement, p. 9-10.  The Arbitration Clause is

located in subsection (h) of section 13, which is titled "General."  Subsection (h) begins on page

nine of the Employment Agreement and runs, without a break, to the bottom of page 10, a single

paragraph of 56 lines.  Within that paragraph, starting on page 9 and running onto page 10, with

*no* spacing, font change, capitalization, or emphasis of *any kind* indicating that the employee was

waiving a fundamental civil right, is the following language:

> In consideration of the mutual promises set forth herein, you and Company agree that any and all controversies, claims or disputes arising out of or relating to this Agreement, its enforcement, interpretation, performance, expiration, or because of an alleged breach, default, or misrepresentation in connection with any of its provisions, or arising out of or relating in any way to your employment with Company (pursuant to this Agreement or otherwise), or termination thereof, shall be submitted to final and binding arbitration, to be held in the city in which your services were performed in accordance with the procedures required under New York and federal law. To the extent permitted by law, you and Company agree not to commence any arbitration or other legal action for any controversies, claims or disputes (other than criminal offenses) more than six months or the date of termination of your employment with company, and you and Company agree to waive any statute of limitations to the contrary.

Employment Agreement, pp. 9-10.  On or about March 26, 2018, Chang signed the Employment

Letter, which modified his employment to at-will status.  Chang Decl. ¶ 8, Ex. 3.  The

Employment Letter, in relevant part, reads:

> We hereby agree the employment agreement between you and DramaFever Corp., a subsidiary of Warner Bros. Master Distributor Inc., the right and obligations of which were assigned to Warner Bros. Digital Labs Inc., dba DramaFever, ("Company") dated June 23, 2016 (the "2016 Employment Agreement"), will terminate, effective as of the close of business on March 31. 2018.
>
> …
>
> We wish to remind you that even though the 2016 Employment Agreement has been terminated, in accordance with Paragraph 10 of the personal service contract ("Survivability"), certain obligations and rights provided under that agreement will survive the termination or expiration of the agreement and remain enforceable.

While the Employment Letter refers to and defines the 2016 Employment Agreement –

paragraph 10 of which is entitled "Survivability" – the Letter's reference to an undefined

"personal services contract" is ambiguous, particularly because the Letter specifically defined the 2016 Employment Agreement.

### B. <u>Defendant Warner Bros. Discriminates and Retaliates against Plaintiff</u>

Plaintiff Chang and his Asian American co-workers experienced race and national origin discrimination at the hands of Warner Bros. and the executives whom Warner Bros. installed at DramaFever.  Compl. ¶ 73.  Ultimately, Warner Bros. shut down DramaFever and terminated every Asian American member of DramaFever's executive class.  At the same time, Warner Bros. retained *every* White member of DramaFever's executive class.  Compl. ¶ 73.

After being terminated, Plaintiff Chang retained legal counsel who then contacted Warner Bros. to put the Company on formal notice that Warner Bros.' actions constituted illegal discrimination and retaliation.  Compl. ¶ 80.  Warner Bros. responded, months after Plaintiff Chang's termination and for the very first time, by stating that it would pursue legal action against Plaintiff Chang if he filed suit against Warner Bros.  Compl. ¶ 81.  Plaintiff Chang alleges that Warner Bros. retaliation against him is ongoing.  Compl. ¶¶ 93-98, 116.

## III.   <u>ARGUMENT</u>

In deciding a motion to compel arbitration, courts apply a standard similar to that applicable to a motion for summary judgment.  *Bensadoun v. Jobe-Riat,* 316 F.3d 171, 175 (2d Cir. 2003) ("If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary.")  As a result, allegations related to arbitrability are evaluated to determine "whether they raise a genuine issue of material fact that must be resolved by a fact-finder at trial."  *Schnabel v. Trilegiant Corp.,* 697 F.3d 110, 113 (2d Cir. 2012).

A.  **Claims In The Instant Action Are Not Subject To The Arbitration Clause Buried Within Plaintiff Chang's Employment Agreement**

As part of this case, Plaintiff Chang alleges that Warner Bros. retaliated against him for the legally-protected actions he took after his termination.  These retaliation claims fall outside the proper scope of the Arbitration Clause.  Warner Bros. cannot force Plaintiff Chang to litigate his claims in the shadows.  The Court should deny Defendant's motion.

There exists a longstanding principle that individuals cannot prospectively waive their civil rights.  *See Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 51, 94 S. Ct. 1011, 1021 (1974).  During the life of the Employment Agreement, Plaintiff Chang's agreement to arbitrate was contemporaneous with his ongoing employment and, therefore, the accrual of relevant claims.  Here, however, Defendant Warner Bros. seeks to impose its Arbitration Clause upon claims which arose *both* after the Employment Agreement ended *and* which arose after the employment relationship itself ended.  The Court cannot allow Warner Bros. to do so.  If the Court were to grant this motion, it would only further undermine the efficacy of anti-discrimination laws by allowing an even broader class of claims to be shielded from public scrutiny.[1]

Claims between parties who had executed a prior arbitration agreement are not necessarily arbitrable.  *See e.g. Gallagher v. Pepe Auto Grp.*, No. 18 CV 3433 (VB), 2019 U.S. Dist. LEXIS 27386, at *9 (S.D.N.Y. Feb. 21, 2019) ("[P]laintiff's post-termination claims do not fall under the arbitration clause.  They require examination of different evidence and do not

---

[1] The legal tide is turning against forced arbitration of civil rights claims.  New York recently barred forced arbitration of sexual harassment claims. *Update: New York State Passes Budget, Creates New Sexual Harassment Obligations For Employers*, https://www.natlawreview.com/article/update-new-york-state-passes-budget-creates-new-sexual-harassment-obligations, April 18, 2018.  A legislative bill with similar effect is currently pending in Congress.  H.R.1443 - Ending Forced Arbitration of Sexual Harassment Act of 2019.

require interpretation of or reference to the Employment Agreement.")  Here, the claims at issue

arise out of correspondence between Plaintiff Chang's counsel and Warner Bros.' outside

counsel.  The claims at issue did not exist during Plaintiff's and Defendant's employment

relationship.

Defendant Warner Bros. has failed to establish that the Arbitration Clause is enforceable

across all of Plaintiff's claims.  Warner Bros.' post-employment retaliation falls outside the

scope of the Employment Agreement and the Arbitration Clause contained therein.  Therefore,

the Court must deny Defendant's motion.

**B.**     <u>**Warner Bros. Is Not A Party To The Arbitration Clause**</u>

Plaintiff filed suit against Defendant Warner Bros. Entertainment, Inc., alleging that it

discriminated and retaliated against him.  If the Arbitration Clause applies at all—and, as shown

below, it does not—the Clause would apply, by its own terms, *only* in allowing DramaFever

itself to require Plaintiff arbitrate his claims against DramaFever.  The language of the

Arbitration Clause is plain:

> In consideration of the mutual promises set forth herein, you and Company agree
> that any and all controversies, claims or disputes arising out of or relating to this
> Agreement, its enforcement, interpretation, performance, expiration, or because of
> an alleged breach, default, or misrepresentation in connection with any of its
> provisions, or arising out of or relating in any way to your employment with
> Company (pursuant to this Agreement or otherwise), or termination thereof, shall
> be submitted to final and binding arbitration

Employment Agreement p. 9.  The "Company" is defined in the Employment Agreement as

"DramaFever Corp., a subsidiary of Warner Bros. Master Distributor Inc."  *Id.* at 1. The

Employment Agreement is not silent on the existence of additional Warner Bros. entities.  Page 2

of the Employment Agreement, section 1, subsection (b) defines the "WBE" group as including

"Warner Bros. Entertainment, Inc., any parent, subsidiary, or affiliated company, including

DramaFever, or any division thereof…." *Id.* at 2.  As such, Warner Bros. is not bound by the

provisions of the Arbitration Clause; it would not be enforceable if Plaintiff Chang sought to assert it against Warner Bros.

Therefore, the Arbitration Clause is not mutual between Warner Bros. and Plaintiff Chang, and as such, not enforceable on either party.  *See Trumbull v. Century Mktg. Corp.,* 12 F. Supp. 2d 683, 686 (N.D. Ohio 1998) (rejecting motion to compel arbitration, stating that "without mutuality of obligation, a contract cannot be enforced."); *Noohi v. Toll Bros., Inc*., 708 F.3d 599, 613-14 (4th Cir. 2013) (finding non-mutual arbitration clause unenforceable for lack of consideration).

"Under New York contract law, 'mutual promises to arbitrate constitute[] consideration sufficient to support [an] arbitration agreement.'" *Abeona Therapeutics, Inc. v. EB Research P'ship*, No. 18-cv-10889 (DLC), 2019 U.S. Dist. LEXIS 24376, at *10 (S.D.N.Y. Feb. 14, 2019);  *Kopple v. Stonebrook Fund Mgmt., LLC*, 18 A.D.3d 329, 794 N.Y.S.2d 648, 648 (App. Div. 1st Dept. 2005).  Again, the Arbitration Clause is not mutual between Warner Bros. and Plaintiff Chang, so the Court cannot allow Warner Bros. to force Plaintiff Chang's claims into arbitration.

Further, Defendant's argument that Plaintiff is estopped from resisting application of the Arbitration Clause is misleading and off point.  The treatment of Warner Bros. and DramaFever in the Complaint is irrelevant: the real question here is whether the Plaintiff treated the two entities as interchangeable "during the time period at issue in the complaint." *Medidata Sols., Inc. v. Veeva Sys.*, 748 F. App'x 363, 366 (2d Cir. 2018).  Defendant has failed to show that Plaintiff Chang treated Warner Bros. and DramaFever as interchangeable entities during his employment there.  Defendant's estoppel argument is unsupported by the law or the facts, and it must be disregarded.

Simply put, Defendant Warner Bros. cannot establish that the Arbitration Clause applies to it.  The language of the Employment Agreement containing the Arbitration clause is plain: it applies to DramaFever, not Defendant.  Therefore, the Court must deny Defendant's motion.

**C.    The Arbitration Clause At Issue Is Unenforceable Under Well-Settled New York State Law**

The Federal Arbitration Act "reflects the fundamental principle that arbitration is a matter of contract," *Rent-A-Ctr., W., Inc. v. Jackson,* 561 U.S. 63, 67 (2010), and "strictly a matter of consent[.]"  *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (internal quotation marks omitted).  Accordingly, a court considering a motion to compel arbitration "must determine whether the parties agreed to arbitrate."  *Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 844 (2d Cir. 1987).  As shown below, the Employment Agreement, including the Arbitration Clause and delegation provision, are not enforceable contracts.

**1.    The Arbitration Clause Is Not A Binding Contractual Agreement Under New York State Law**

"[I]n deciding whether a contractual obligation to arbitrate exists, courts should generally apply state-law principles that govern the formation of contracts."  *Applied Energetics, Inc. v. NewOak Capital Markets, LLC,* 645 F.3d 522, 526 (2d Cir. 2011) (internal quotation marks omitted).  Therefore, New York law guides the analysis of whether the Arbitration Clause is a valid contract to arbitrate.

Under New York law, "it is well settled that a party . . . may not be compelled to arbitrate its dispute with another unless the evidence establishes the parties' clear, explicit and unequivocal agreement to arbitrate."  *Fiveco, Inc. v. Haber,* 11 N.Y.3d 140, 144 (2008) (internal quotation marks omitted).  New York law requires that "the intention of *both parties* to be bound by an arbitration clause must be affirmatively established."  *Peterson v. Beale,* No. 92-cv-5412, 1995 U.S. Dist. LEXIS 11580, at *6 (S.D.N.Y. Aug. 11, 1995) (emphasis added).  This is

-10-

consistent with Federal common law, which holds that "while doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." *Applied Energetics*, 645 F.3d at 526. Under New York law, the burden of proving that there is a binding agreement to arbitrate is on the party seeking arbitration. *Marben Realty Co. v. Sweeney,* 87 A.D.2d 561, 562 (N.Y. App. Div. 1st Dep't 1982); *Am. Centennial Ins. Co. v. Williams*, 233 A.D.2d 320, 320, 649 N.Y.S.2d 190, 191 (App. Div. 1996).

As described above, Warner Bros. is not subject to the Arbitration Clause. Section III(b), *supra*. Because Warner Bros. is not bound by the Arbitration Clause, the provisions of that Clause are not mutual: both parties are not bound by it. Therefore, the Arbitration Clause, including the Delegation Provision contained therein, is unenforceable.

### 2. The Arbitration Clause Is Unenforceable Because It Did Not Survive The Termination Of The Employment Agreement That Contains It

Warner Bros. is seeking to enforce an Arbitration Clause that, as a matter of contract, ceased to be effective in 2018. Plaintiff Chang signed the Employment Agreement – which contained the Arbitration Clause – in June 2016. In January 2018, Plaintiff signed the Employment Letter agreeing that the Employment Agreement would terminate on March 31, 2018. The Employment Letter referred to certain provisions of the Employment Agreement as surviving, but it was not accompanied by the Employment Agreement itself. Chang Decl. ¶¶ 7-11. Although the Employment Agreement includes a provision that purports to provide for the survival of the Arbitration Clause, the language of the Arbitration Clause itself makes clear that it cannot possibly survive the implementation of the Employment Letter in 2018.

The Arbitration Clause specifically describes the consideration for which Plaintiff Chang gave up the right to arbitrate certain disputes: "In consideration of the mutual promises set forth

herein." That consideration included, to Plaintiff Chang's benefit, a period of guaranteed employment and accompanying compensation. Chang Decl. ¶ 7 Ex. 2, p. 9. In contrast, after the implementation of the at-will Employment Letter, Plaintiff Chang no was longer receiving the benefit of the "mutual promises" for guaranteed employment set forth in the Employment Agreement. As such, any consideration which would have supported the Arbitration Clause no longer existed. The Court cannot assume that Plaintiff Chang's ongoing employment subsequent to the implementation of the Employment Letter is adequate consideration. Doing so would require the Court to ignore the fact that Arbitration Clause in controversy identifies the specific consideration being exchanged.

Assuming, *arguendo,* that Plaintiff Chang's continued employment served as sufficient consideration for the Arbitration Clause during the term of the Employment Letter, that consideration ceased to exist after Defendant terminated Plaintiff Chang. *Lockette v. Stanley*, No. 18-cv-876 (JGK), 2018 U.S. Dist. LEXIS 171156, at *14 (S.D.N.Y. Oct. 3, 2018) (continued employment serves as consideration sufficient to enforce arbitration agreement). After Defendant terminated Plaintiff, it could no longer point to a continuing employment relationship as consideration for the Arbitration Clause. Thus, consideration supporting enforcement of the Arbitration Agreement ceased after the date of Plaintiff Chang's termination. Therefore, claims arising after that date cannot be subject to the Arbitration Clause.

The Court should not allow the Arbitration Clause in the Employment Agreement to govern claims which arose after the Employment Agreement was replaced by the Employment Letter, let alone claims which arose after Plaintiff Chang's employment ended. To do so would overstep even the permissive bounds of the Federal Arbitration Act.

3.      **The Arbitration Clause At Issue Is Unenforceable Because It Is Unconscionable**

Under New York State Law, an agreement is unenforceable if it is unconscionable. *Gillman v. Chase Manhattan Bank*, 73 N.Y.2d 1, 10, 537 N.Y.S.2d 787, 791, 534 N.E.2d 824, 828 (1988).  Courts find agreements to be unconscionable where there is substantive and procedural unconscionability.  *Id.*  Substantive unconscionability alone, however, can be enough to render an agreement unenforceable.  *See Brower v. Gateway 2000, Inc.*, 246 A.D.2d 246, 676 N.Y.S.2d 569, 573-74 (N.Y. App. Div. 1st Dep't 1998) (arbitration term unenforceable where procedural unconscionability is not present but substantive unconscionability is apparent.)  As shown below, the Arbitration Clause of the Employment Agreement is *both* procedurally and substantively unconscionable.  Therefore, the Arbitration Clause is unenforceable.

a.      **The Arbitration Clause Is Procedurally Unconscionable**

Defendant's Arbitration Clause is procedurally unconscionable because Defendant buried it in the next-to-last page of an eleven-page Employment agreement, in a solid paragraph which begin on the prior page, and which was entitled "general." Ex. 2. p. 9.  Warner Bros.' deliberate decision not to highlight its Arbitration Clause effectively buried it in a non-descript "general" paragraph, thereby rendering the Clause procedurally unconscionable.  *See Sherry v. Sisters of Charity Med. Ctr.*, 98-CV-6151 (JG), 1999 U.S. Dist. LEXIS 6623, at *12-13 (E.D.N.Y. May 4, 1999)  (refusing to enforce arbitration clause where the only mention of arbitration appears under a general section called 'Other Items of Importance' and is not offset or highlighted from the surrounding subsections.)  The Court should not allow Defendant Warner Bros., a global media conglomerate, to take advantage of its employees and usurp their rights in this cynical manner.

Further, the Employment Letter fails to specifically address Plaintiff Chang's purported ongoing obligation to arbitrate.  This failure prevents the survival of the Arbitration Clause.

Where an employer seeks to bind an employee to an arbitration agreement by virtue of an outside acknowledgement, courts have held that the agreement is unenforceable if the acknowledgement does not specifically contain reference to the arbitration obligations.  *See Whitaker v. Clear Channel Broad., Inc.*, No. 3:04-cv-2041 (JCH), 2005 U.S. Dist. LEXIS 38474, at *11 (D. Conn. Dec. 16, 2005) ("the court finds it significant that the acknowledgment signed by the plaintiff in *Topf* explicitly references an arbitration agreement").

### b.      The Arbitration Clause is Substantively Unconscionable

The Arbitration Clause at issue in this case is substantively unconscionable.  It is overbroad in scope and imposes a truncated statute of limitations, reducing an employee's right and ability to pursue their federally protected rights.  Because of this, the Arbitration Clause unlawfully restrains employees and strips them of their federally protected rights.  The Arbitration Clause must not be enforced.

Courts routinely hold that the statutes of limitations on certain federal employment claims cannot be reduced.  *See e.g. Castellanos v. Raymours Furniture Co.*, 291 F. Supp. 3d 294, 300 (E.D.N.Y. 2018)  ("[F]ederal courts have routinely concluded that arbitration provisions shortening the limitations period to bring FLSA claims are unenforceable.); *Friedmann v. Raymour Furniture Co*., No. 12-cv-1307 (LDW) (AKT), 2012 U.S. Dist. LEXIS 149511, at *6 (E.D.N.Y. Oct. 16, 2012) (federal claims not affected by reduced statute of limitations unless specifically referenced in agreement.  Further, under New York law, reduced statutes of limitations are not enforceable when against public policy.  *Watson v. Riptide Worldwide, Inc*., No. 11-cv-0874 (PAC), 2012 U.S. Dist. LEXIS 15125, 2012 WL 383946, at *5 (S.D.N.Y. Feb. 7, 2012).  *Compare with, Zisumbo v. Convergys Corp*., No. 1:14-cv-134-RJS, 2017 U.S. Dist. LEXIS 193832, at *5 (D. Utah Nov. 22, 2017) ("A majority of district courts to address the issue

have concluded the FMLA gives employees a right to sue, and a contract shortening the statutory two-year limitations period impedes that right and therefore violates public policy.")

Here, Defendant's Arbitration Clause limits Plaintiff Chang from filing claims against Defendant more than six months after the termination of his employment.  As this case involves ongoing post-termination retaliation, Defendant has interfered with Plaintiff's ability to recover what would be available to him in Federal Court.  Section 1981 has a four-year statute of limitations, meaning that Plaintiff would have access to an additional three and a half years of post-employment claims in Federal Court.[2]

Although some of the specific flaws in the Arbitration Clause apply to causes of action not at issue in this lawsuit, those flaws are not immaterial here.  Defendant qualifies the Arbitration Clause with the phrase "to the extent permitted by law."  That caveat makes it impossible for any employee to accurately understand the scope of the Arbitration Clause at the time of signing.  For example, an employee might believe that they have waive their right to *any* court action against the employer, which, as shown above, is not true.  Reading the Arbitration Clause, an employee could not determine, for example, that they retain the right to file a charge of discrimination at the U.S. Equal Employment Opportunity Commission ("EEOC")– a right that cannot be waived.  Because the Arbitration Clause is unclear, confusing, and misleading, it is substantively unconscionable.

The EEOC itself described how mandatory, binding arbitration stymies the purpose of Title VII and other civil rights laws.  *See* EEOC, Notice No. 915.002, *Policy Statement on Mandatory Binding Arbitration of Employment Discrimination Disputes as a Condition of*

---

[2] An alternative reading of this otherwise unenforceable private statute of limitations is that post-employment claims were never intended to fall under the Arbitration Clause.

*Employment* (1997), available online at https://www.eeoc.gov/policy/docs/mandarb.html. Arbitration of these claims (i) prevents the development of anti-discrimination jurisprudence, (ii) prevents the public and the legislature from ensuring that these laws are being properly interpreted and applied, and (iii) undermines public enforcement of these laws.  *Id.*  All of these policy concerns still remain relevant today, in 2019.

Affirming overbroad arbitration clauses – like that of Warner Bros. here – allows employers to mislead employees, deter them from asserting their Federally protected rights, and deny them their constitutionally protected access to the American judicial system.  These same dangers are at issue in this case: Warner Bros. is attempting to illegally chill and deter Plaintiff Chang from pursuing his Federally protected rights.   The Court should not allow Warner Bros. to continue to shield itself from public accountability at the expense of its employees.  This case should be heard.

**IV.**     <u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiff Chung H. Chang respectfully requests that the Court deny Defendant's Motion to Compel Arbitration in its entirety.  Plaintiff Chang further requests that the Court set a date by which Defendant Warner Bros. must file an Answer to his Complaint. Plaintiff Chang further requests that the Court set a date for a hearing in this matter.


Dated: March 29, 2019                    Respectfully submitted,
        New York, NY

                                         ___/s/ Veronica S. Jung_____
                                         Veronica S. Jung, Esq.
                                         Owen H. Laird, Esq.
                                         LAW OFFICES OF VERONICA S. JUNG, PLLC
                                         200 Park Avenue, Suite 1700
                                         New York, NY 10166
                                         Telephone: (212) 897-1981
                                         Email: vjung@veronicajunglaw.com
                                         Email: olaird@veronicajunglaw.com

                                         *Attorneys for Plaintiff Chung H. Chang*