```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
---------------------------------------------------------------
| CHUNG H. CHANG,                |                              |
|                     Plaintiff, |                              |
| -against-                      | 19 Civ. 2091 (LAP)           |
|                                | OPINION & ORDER              |
| WARNER BROS. ENTERTAINMENT, INC.,|                            |
|                     Defendant. |                              |

LORETTA A. PRESKA, Senior United States District Judge:

Plaintiff Chung H. Chang ("Plaintiff" or "Chang") brings this action against Warner Bros. Entertainment Inc. ("Warner Bros.") alleging race discrimination and retaliation in violation of 42 U.S.C. § 1981 and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 et seq. (Complaint ("Compl."), dated Mar. 6, 2019 [dkt. no. 1]). Warner Bros. moves to compel arbitration and stay this action under the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (Notice of Motion dated Mar. 8, 2019 [dkt. no. 6]). For the reasons stated below, Warner Bros.' motion is GRANTED, and this action is STAYED pending arbitration.

I. Background

In 2015, Chang started working as a Vice President at a digital streaming service provider named Dramafever. (Compl. ¶¶ 1, 28). Warner Bros. acquired Dramafever in 2016, and, as part of that transaction, DramaFever became Warner Bros. Digital

1

Labs ("Digital Labs"). (Id. ¶ 31).  Chang decided to remain in his Vice President position after the acquisition and executed an agreement with Digital Labs ("Agreement") governing the terms of his employment. (See Declaration of Matthew S. Dontzin ("Dontzin Decl."), dated Mar. 8, 2019 [dkt. no. 8], Ex. A).

Of relevance here, the Agreement contains an arbitration clause providing that "any and all controversies, claims or disputes . . . arising out of or relating in any way to [Chang's] employment with Company (pursuant to this Agreement or otherwise), or termination thereof, shall be submitted to final and binding arbitration." (Id. ¶ 13(h)).  The arbitration clause further provides that "[a]ny question concerning the arbitrability of any claim or issue arising under this Paragraph shall be resolved by the arbitrator to the fullest extent permitted by applicable law." (Id.)  The Agreement also contains a "Survivability" clause stating that "the parties' rights and obligations under Paragraph 9 through 13"--which includes the arbitration clause--"will survive the expiration of the Term or termination of this Agreement." (Id. ¶ 10).

In March 2018, Chang and Digital Labs executed a side letter ("Side Letter") that terminated the Agreement and modified Chang's employment to at-will status. (Dontzin Decl. Ex. B).  The Side Letter contained a reminder that "even though the [Agreement] has been terminated, in accordance with

Paragraph 10 of the personal service contract ('Survivability'), certain obligations and rights provided under that agreement will survive the termination or expiration of the agreement, and remain enforceable." (Id.)

In late 2018, Warner Bros. decided to shut down components of Digital Labs (Compl. ¶¶ 68-74), and Chang and several other employees were terminated. (Id.; Declaration of Chung H. Chang, dated Mar. 29, 2019 [dkt. no. 13], ¶ 3). On March 6, 2019, Chang filed this employment discrimination lawsuit, alleging that Warner Bros. terminated him and other Asian American employees based on their race and retaliated against him after he notified Warner Bros. of his discrimination claims. (Compl. ¶¶ 106-42).

Warner Bros. requests that the Court grant its motion to compel arbitration and stay this action. Warner Bros. notes that an arbitration between Digital Labs and Chang addressing the same claims asserted in this action is already underway and that Chang has been participating in that proceeding without any objection. (Dontzin Decl. ¶¶ 5-6; Reply Memorandum of Law In Support of Warner Bros.' Motion to Compel Arbitration ("Reply"), dated April 5, 2019 [dkt. no. 14], at 2).

II. Legal Standard

The Federal Arbitration Act ("FAA") provides that a written agreement to arbitrate "shall be valid, irrevocable, and

3

enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. According to the Supreme Court, the FAA "embodies [a] national policy favoring arbitration." Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006). Notwithstanding the strong policy favoring arbitration agreements, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." In re Am. Express Fin. Advisors Sec. Litig., 672 F.3d 113, 127 (2d Cir. 2011) (quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002)).

When deciding a motion to compel arbitration under the FAA, courts evaluate "(1) whether the parties have entered into a valid agreement to arbitrate, and if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." In re Am. Express Fin. Advisors Sec. Litig., 672 F.3d at 128 (citations omitted). If those two conditions are met, the FAA "mandates that district courts shall direct the parties to proceed to arbitration." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (emphasis in original). The court "applies a standard similar to that applicable for a motion for summary judgment," Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003), and may grant a motion to compel arbitration "when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that movant is entitled to judgment as a matter of law." Thomas v. Pub. Storage, Inc., 957 F. Supp. 2d 496, 499 (S.D.N.Y. 2013).

III. Discussion

Whether Chang agreed to arbitrate "is a question of state contract law." Schnabel v. Trilegiant Corp., 697 F.3d 110, 119 (2d Cir. 2012).  Under New York law, which applies here,[1] "a party who signs a written contract is conclusively presumed to know its contents and to assent to them, and he is therefore bound by its terms and conditions." Patterson v. Raymours Furniture Co., 96 F. Supp. 3d 71, 76 (S.D.N.Y. 2015) (citing Level Exp. Corp. v. Wolz, Aiken & Co., 305 N.Y. 82, 87 (1953)), aff'd, 659 Fed. App'x 40 (2d Cir. 2016).  Here, the Agreement Chang signed contains an arbitration clause providing that "any and all controversies, claims or disputes . . . arising out of or relating in any way to your employment with Company . . . or termination thereof, shall be submitted to final and binding arbitration" and that "[a]ny question concerning the arbitrability of any claim . . . shall be resolved by the arbitrator."  (Dontzin Decl. Ex. A ¶ 13(h)).  Chang therefore

---

[1] The Agreement identifies New York law as the governing law (see Dontzin Decl. Ex. A ¶ 13(h)), and both parties assume that New York law applies. See Response Personnel, Inc. v. Hartford Fire Ins. Co., 812 F. Supp. 2d 309, 314 (S.D.N.Y. 2011) (applying New York law when the "parties' briefs assume that New York law controls").

5

agreed to submit all employment-related claims to arbitration and delegated to the arbitrator all questions regarding whether particular claims fall within the arbitration clause's scope.

Chang opposes enforcement of the arbitration clause for four main reasons. First, he argues that it is no longer effective, having purportedly expired when Chang executed the Side Letter that terminated the Agreement. (Memorandum of Law In Opposition to Warner Bros.' Motion to Compel Arbitration ("Opp."), dated March 29, 2019 [dkt. no. 12], at 11-12). Second, Chang contends that the arbitration clause cannot be enforced because it is procedurally and substantively unconscionable. (Id. at 13-16). Third, he argues that Warner Bros. cannot enforce the arbitration clause since Warner Bros. was not a signatory to the Agreement. (Id. at 8-10). Finally, Chang argues that arbitration would be improper because some of his claims fall beyond the scope of the arbitration clause. (Id. at 7-8). Chang's arguments are all unavailing.

   a. The Arbitration Clause Remains in Effect

Although the Agreement terminated in 2018 when Chang executed the Side Letter, the arbitration provision remained in effect by operation of the Agreement's "Survivability" clause, which provides that certain terms of the contract, including the arbitration requirement, "survive the expiration of the Term or termination of [the] Agreement." (Dontzin Decl. Ex. A

6

¶¶ 10, 13(h)).  Chang's argument that the Side Letter somehow nullifies the Agreement's survivability provision is rebutted by the Side Letter itself, which expressly reminded Chang that, despite the Agreement's termination, "certain obligations and rights" under the Agreement "will survive" and "remain enforceable."  (See Dontzin Decl. Ex. B).

Chang further contends that the arbitration clause could not have survived because the consideration Chang received in the Agreement--i.e., "a period of guaranteed employment and accompanying compensation"--ceased to exist after the Agreement terminated.  (Opp. at 11-12).  This argument fails.  Chang acknowledges that when the Agreement was executed, it was supported by consideration on both sides and created a binding contract.  (Id.)  His position that the arbitration clause could only be enforceable today if Chang had continued receiving benefits under the Agreement after it terminated has no basis in the law.  Moreover, even if continued consideration were required to support the arbitration clause's survival, that condition is present here:  Because the arbitration provision applies bilaterally, even after the Agreement terminated, Chang continued receiving the benefit of Digital Labs' reciprocal obligation to arbitrate any claims it had against Chang.  (See Dontzin Decl. Ex. A ¶ 13(h)).  The Court therefore rejects

Chang's contention that the arbitration clause expired when the Agreement terminated.

### b. The Arbitration Clause Is Not Unconscionable

Chang also contends that the arbitration clause is unenforceable on unconscionability grounds. The Second Circuit has explained New York's unconscionability standard as follows:

> [A] contract is unconscionable when it is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforcible [sic] according to its literal terms. Generally, there must be a showing that such a contract is both procedurally and substantively unconscionable. The procedural element of unconscionability concerns the contract formation process and the alleged lack of meaningful choice; the substantive element looks to the content of the contract, per se.

Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115, 121-22 (2d Cir. 2010) (quoting Nayal v. HIP Network Serv. IPA, Inc., 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009)) (citations and internal quotation marks omitted). Chang has not established that the arbitration agreement was unconscionable.

### 1. Procedural Unconscionability

The procedural unconscionability analysis focuses on factors including "whether deceptive or high-pressure tactics were employed, the use of fine print in the contract, [and] the experience and education of the party claiming unconscionability." Gillman v. Chase Manhattan Bank, N.A., 73 N.Y.2d 1, 10-11 (1988). No factor supporting a finding of

8

procedural unconscionability is present here. Despite Chang's claim that the arbitration clause is "buried" in the Agreement (Opp. at 13), it covers over one full page in a relatively short, eleven-page document, references "arbitration" over twenty times, and is not in fine print or in any way hidden. (See Dontzin Decl. Ex. A at 9-10). Under these circumstances, the arbitration clause is not procedurally unconscionable. See Brower v. Gateway 2000, Inc., 676 N.Y.S.2d 569, 573 (N.Y. App. Div. 1st Dep't 1998) (no procedural unconscionability when clause was not "hidden" or "tucked away" in "a complex document of inordinate length").[2]

### 2. Substantive Unconscionability

Nor is the arbitration clause substantively unconscionable. An agreement is substantively unconscionable when it is "so grossly unreasonable as to be unenforceable according to its literal terms" and "unreasonably favorable to the party seeking to enforce the contract." Isaacs v. OCE Business Servs., Inc.,

---

[2] As part of his procedural unconscionability argument, Chang contends that the arbitration clause is unenforceable because it was not explicitly referenced in the Side Letter. (Opp. at 13-14). But the case Chang cites in support of his argument is inapposite. (See Opp. at 14 (citing Whitaker v. Clear Channel Broad., Inc., No. 04 Civ. 2041, 2005 WL 3478352 (D. Conn. Dec. 19, 2005))). In Whitaker, the court examined whether plaintiff's signature on an offer letter containing no arbitration clause also constituted assent to an arbitration provision in an employee handbook. Here, unlike Whitaker, there is no question that Chang signed and is bound by a contract containing an arbitration clause.

968 F. Supp. 2d 564, 569 (S.D.N.Y. 2013). Chang's only substantive unconscionability argument attacks the Agreement's temporal limitations clause, which bars the parties from asserting claims against each other more than six months after the end of Chang's employment. (Opp. at 14-16). But as Warner Bros. notes in its briefing, the limitations clause is entirely irrelevant here, as both this action and the parallel arbitration regarding Chang's discrimination claims were timely filed within the six-month limitation period. (Reply at 9). And even if the Court were to deem the limitation clause unconscionable, the "appropriate remedy" would be "to sever the [limitation] provision . . . rather than void the entire agreement," in which case Chang would still be required to submit his claims to arbitration, albeit with a modified limitations period. See Ragone, 595 F.3d at 124-25 (quoting Brady v. Williams Capital Grp., L.P., 878 N.Y.S.2d 693, 701 (N.Y. App. Div. 1st Dep't 2009)). The Court therefore finds that the arbitration clause is not void for unconscionability.

    c. <u>Warner Bros. Can Enforce the Arbitration Clause</u>

Chang further argues that Warner Bros. cannot compel enforcement of the arbitration clause because Warner Bros. is

not a signatory to the Agreement, which was executed by Chang and Digital Labs. (Opp. at 8-10). Chang is mistaken.

Under principles of estoppel, a signatory to an arbitration agreement "will be estopped from avoiding arbitration with a non-signatory when the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the [e]stopped party has signed." <u>Lismore v. Societe Generale Energy Corp.</u>, No. 11 Civ. 6705, 2012 WL 3577833, at *6 (S.D.N.Y. Aug. 17, 2012) (citation and internal quotation marks omitted); <u>see also</u> <u>JLM Indus., Inc. v. Stolt-Nielsen SA</u>, 387 F.3d 163, 177 (2d Cir. 2004) (A non-signatory to an arbitration agreement may compel arbitration when a "review of the relationship among the parties, the contracts they signed, and the issues that had arisen among them discloses that the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." (internal quotation marks omitted)). In determining whether a non-signatory can enforce an arbitration clause, courts evaluate whether: "(1) the signatory's claims arise under the subject matter of the underlying agreement, and (2) whether there is a close relationship between the signatory and the non-signatory party." <u>Lismore</u>, 2012 WL 3577833, at *7 (collecting

cases) (internal quotation marks omitted).  Both prongs of that standard are satisfied here.

With respect to the first prong, the Agreement requires arbitration of "any and all controversies, claims or disputes . . . arising out of or relating in any way to [Chang's] employment . . . or termination thereof."  (Dontzin Decl. Ex. A ¶ 13(h)).  Chang's claims of workplace discrimination and retaliation (see, e.g., Compl. ¶¶ 15, 48, 93-96, 112-122) plainly arise from the subject matter of the Agreement, see Ragone v. Atl. Video at Manhattan Ctr., No. 08 Civ. 6084 (JGK), 2008 WL 4058480, at *8 (S.D.N.Y. Aug. 29, 2008) (ruling that plaintiff's workplace sexual harassment claims fell under the subject matter of the arbitration agreement when the agreement covered "any and all claims or controversies arising out of the employee's employment"), aff'd, 595 F.3d 115 (2d Cir. 2010).

The second prong of the estoppel test examines whether there is a sufficiently "close relationship" between the signatory and non-signatory seeking to compel arbitration.  See, e.g., Sokol Holdings, Inc. v. BMB Munai, Inc., 542 F.3d 354, 359 (2d Cir. 2008).  For estoppel to apply, there must be "a relationship among the parties which either support[s] the conclusion that [the signatory] had consented to extend its agreement to the [non-signatory], or, otherwise put, made it inequitable for [the signatory] to refuse to arbitrate on the

12

ground that it had made no agreement with the [non-signatory]." Id. at 361.

The relationship between Warner Bros. and Digital Labs--two corporate affiliates--is sufficiently close to support equitable estoppel here. See Laumann v. National Hockey League, 989 F. Supp. 2d 329, 336 (S.D.N.Y. 2013) (noting that courts have found a sufficiently close relationship "where the non-signatory is a parent company, corporate successor, guarantor, or corporate affiliate of a signatory"). There is no question here that Chang was aware of the corporate relationship between the two entities: He worked for Digital Labs before it was acquired by Warner Bros. and assisted in the due diligence process preceding that transaction. (See Compl. ¶¶ 28-30). The Agreement itself references Warner Bros. as a parent/affiliate of Digital Labs (see Opp. at 8; Dontzin Decl. Ex. A ¶ 1(b)), and Chang's allegations make clear that he viewed Warner Bros. and Digital Labs as largely interchangeable during the time of his employment. Indeed, Chang's complaint jointly refers to Digital Labs and Warner Bros. as the "Company" and describes how the "Company" improperly discriminated and retaliated against him and other Asian Americans. (See, e.g., Compl. ¶¶ 1, 49, 53-55, 61, 63, 65, 70, 78-80, 115-16). Accordingly, the Court concludes that Chang is equitably estopped from claiming that he did not agree to arbitrate his claims against Warner Bros. See,

13

e.g., Reyes v. Gracefully, Inc., 17 Civ. 9328 (VEC), 2018 WL 2209486, at *5 (S.D.N.Y. May 11, 2018) (finding that plaintiff could not avoid arbitration with signatory's affiliates and owners when he "worked interchangeably" between the companies "without differentiating among them") (collecting cases); Dhaliwal v. Mallinckrodt PLC, 18 Civ. 3146 (VSB), 2019 WL 4739045, at *5 (S.D.N.Y. Sept. 29, 2019) (finding that plaintiff's allegations regarding the "Company"--defined to include both the signatory and non-signatory to the arbitration agreement--demonstrated her understanding that the arbitration requirement also covered claims against the non-signatory).

        d. Questions Regarding the Scope of the Arbitration Clause Are Reserved for the Arbitrator

The Court also rejects Chang's argument that some of his claims fall outside the scope of the arbitration agreement because they concern Warner Bros.' retaliatory conduct during the period after Chang's termination. (Opp. at 7-8). It is well-settled that "parties may agree to have an arbitrator decide not only the merits of a particular dispute, but also gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 529 (2019) (citation and internal quotation marks omitted). Where the contract "delegates the

arbitrability question to an arbitrator, a court may not override the contract" and "possesses no power to decide the arbitrability issue." Id.  That is the case here.  The Agreement expressly states that "[a]ny question concerning the arbitrability of any claim or issue . . . shall be resolved by the arbitrator.  (Dontzin Decl. Ex. A ¶ 13(h)).  The Court must honor the terms of the Agreement and will therefore not address whether some of Chang's claims are beyond the scope of the Agreement, as that question is reserved for the arbitrator.

Conclusion

The Court has considered the other arguments raised in Chang's opposition and finds them without merit.  For the foregoing reasons, Warner Bros.' motion to compel arbitration is GRANTED.  This action is STAYED pending arbitration.  The Clerk of the Court is directed to close this motion [dkt. no. 6].

SO ORDERED.

Dated:     New York, New York
           October 21, 2019

                              _____
                              LORETTA A. PRESKA
                              Senior United States District Judge